# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| MUBEA TAILOR ROLLED BLANKS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TITAN TOOL & DIE LIMITED,<br><br>Defendant. | Case No.: _____<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Mubea Tailor Rolled Blanks, LLC, for its Complaint against Defendant, Titan Tool & Die Limited, states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Mubea Tailor Rolled Blanks, LLC ("Mubea"), is a limited liability company organized and existing under the laws of the State of Delaware, with its headquarters in Florence, Kentucky and its sales and engineering offices in Auburn Hills, Michigan.

2. Non-party, Mubea Precision Springs, Inc., the only member of Mubea, is a corporation organized and existing under the State of Delaware with its headquarters in Florence, Kentucky.

3. Upon information and belief, Defendant, Titan Tool & Die Limited ("Titan"), is a corporation organized and existing under the laws of Ontario, Canada

with its principal place of business in Windsor, Ontario. Titan conducts continuous and systematic sales or operations as part of its general business within the State of Michigan, it supplies parts to plants within Michigan, and its website advertises that it is located only ten minutes from the Windsor-Detroit border.

4. This Court has diversity jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

5. This Court has personal jurisdiction over Mubea and Titan because both parties regularly and systemically conduct business within the State of Michigan.

6. Venue is proper in this Court and District by operation of 28 U.S.C. § 1391(b)(2) and (3).

## FACTUAL BACKGROUND

### The Parties

7. Mubea is an automotive supplier that manufactures metal stamping products. Specifically, Mubea manufactures lightweight tailor rolled components with load and function optimized sheet thickness intended to address requirements regarding crash performance, weight, cost reduction, and part integration.

8. Upon information and belief, Titan is an automotive supplier and manufacturer of metal stamping parts.

9.  Upon information and belief, non-party Formet Industries ("Formet"), is an automated frame assembly plant that assembles front module and full chassis frames to be supplied to original equipment manufacturers for ultimate inclusion in fully assembled vehicles.

10. On or around December 21, 2016, Formet awarded Mubea a letter of Authorization (the "Award Letter," attached as **Exhibit 1**), under which Mubea would manufacture and supply rear rail tailor rolled blanks (the "Blanks") for GM's T1XX Program.

11. Pursuant to the Award, Formet directed Mubea to supply the Blanks to Formet's directed supplier, Titan.  Mubea also supplied the same part (same manufacturing process, equipment, and software) to Magna's Formex facility in Mexico.

12. Under this supply chain relationship, Formet acted as the tier 1 supplier, Titan was the tier 2 supplier, and Mubea was the tier 3 supplier.  Specifically, Mubea manufactured and supplied the Blanks to Titan, who in turn processed the Blanks into automotive parts to be supplied to Formet.  Formet then assembled the parts supplied by Titan and delivered the assembled parts to GM.

13. Accordingly, on or around November 21, 2017, Mubea sent Titan production quotes and Titan in turn issued purchase orders (**Exhibit 2**, Purchase Orders) for the Blanks.

14. On or around August 2020, the parties negotiated and agreed to a reduction in piece price and Titan subsequently issued revised Purchase Orders to reflect the reduction. (**Exhibit 3**, Revised Purchase Orders.) The revised Purchase Orders were accepted by Mubea only with respect to new pricing, but Mubea expressly rejected the inclusion of Titan's terms and conditions. (**Exhibit 4**, August 31, 2020 Email.)

15. Throughout the course of the parties' relationship, Titan has shown a pattern of submitting unsubstantiated and/or unsupported claims as a normal course of their business.

16. For example, in 2018 through July 2019 Titan submitted more than (35) claims in excess of $800,000 for delivery and quality issues. Mubea vehemently denied these claims because during this period of time the exact same part numbers were manufactured by Mubea on the same equipment and shipped to Magna's Formex facility in Mexico with no claims by Formex for the issues claimed by Titan.

17. Typically, when Titan believed it was experiencing assembly issues due to quality of the Blanks manufactured by Mubea, it would timely provide Mubea with notice.

18. Once provided with notice of the alleged quality issue, Mubea would ask for supporting documentation, inspect the Blanks at issue and any other back up documentation provided by Titan. If it was determined that a quality issue existed,

Mubea would accept return of the Blanks at no cost to Titan and would issue a credit to Titan. In many instances, Titan consumed all the parts and alerted of alleged issues to Mubea after the fact.

19. The parties operated in the manner above—where Titan provided timely notice of alleged quality issues and Mubea was afforded the opportunity to investigate the claim—until April 29, 2021.

20. On April 29, 2021, three (3) days after Titan received its last shipment of Blanks from Mubea, Titan sent a letter indicating that Mubea's account was placed on payment hold due to purported quality issues. (**Exhibit 5**, Hold Notice.)

21. Mubea, for its part, vehemently disputed the quality issues generally cited in the April 29, 2021 letter as no official quality claim had been communicated prior to the payment hold.

22. The letter came as a surprise to Mubea who, prior to receiving it, had been in constant communications with Titan regarding Titan's past due account.

23. At the time of the letter, Titan's overall accounts receivable was $924,527.88, and the total past due amounts owing to Mubea was $268,234.80.

24. At no point during the parties' communications regarding Titan's past due account, did Titan ever place Mubea on notice of outstanding quality issues sufficient enough to unilaterally place Mubea's payment account on hold and depart from the parties' custom practice when dealing with quality claims.

25. Nor did Titan provide samples or any other documentation to support its claim that the Blanks at issue were received with burrs, rust, bows, excessive oil, etc., as disingenuously claimed in the letter.

26. Instead, in the months preceding the payment hold, Titan continuously acknowledged that it owed Mubea the total past due amounts requested, promised to make payments toward the outstanding balance, and blamed its late payments on reasons entirely unrelated to Mubea.

27. Indeed, just eight (8) days prior to sending the April 29 letter, Titan promised, in writing, to bring its approximately $567,000 past due account current. (**Exhibit 6**, April 21, 2021 Email.)

28. On May 4, 2021, Titan made a payment of $566,646.12, however by the time this past due amount was satisfied, Titan was again past due $566,646.12.

29. Rather than continuing to make payments that were becoming due and owing, however, Titan conveniently waited until it received Mubea's last shipment of Blanks and it issued its payment hold notice, citing to unsubstantiated quality issues.

30. On May 5, 2021, one (1) week after its notice, Mubea received four (4) Debit Memos from Titan, totaling approximately $1,599,716.74. (**Exhibit 7**, Debit Memos.) Each of the Debit Memos was dated May 5, 2021, and had a "date opened" date of April 6, 2021.

31. Titan claimed that the Debit Memos were being issued for recovery of the costs purportedly incurred by Titan as a result of oil, rust, bow and burr conditions present on Blanks received from Mubea.

32. At the time that Titan sent the Debit Memos, its overall accounts receivable was $1,988,003.63, and the total past due amounts owing to Mubea was $566,646.12.

33. At no point prior to issuing the Debit Memos, did Titan put Mubea on notice of the purported quality issues that it now claimed amounted to over $1.5 million in purported costs to Titan.

34. Nor did Titan offer any samples, documentation or other back up data to support the exorbitant costs it claims it incurred.

35. Notably, unlike past practice, Titan did not ask Mubea to take receipt of the allegedly defective Blanks.

36. Instead, Titan had assembled the Blanks that it claims were defective, supplied the Blanks to Formet, and received payment for same.

37. Upon receiving notice of the Debit Memos, Mubea immediately disputed the validity of same and has demanded payment for the Blanks manufactured and supplied to Titan pursuant to the parties' Purchase Orders.

38. Despite accepting the Blanks manufactured by Mubea, Titan has refused to pay for same, in violation of the Purchase Orders governing the parties' relationship.

39. As of the date of this Complaint, Titan's total amount owing to Mubea is $2,294,080.56.

## COUNT I – BREACH OF CONTRACT

40. Mubea restates and realleges paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41. On November 24, 2017, Mubea entered into a valid, binding contract (the Purchase Orders) with Titan for the manufacture and supply of the Blanks in support of GM's T1XX Program.

42. To satisfy its obligations under the Purchase Orders, Mubea manufactured and supplied the Blanks to Titan, who then processed the Blanks into automotive parts and supplied the parts to Formet.

43. Titan, however, failed to satisfy its obligations under the Purchase Orders when it refused to pay for $2,294,080.56 worth of Blanks that it accepted from Mubea.

44. Mubea has repeatedly requested payment of the Blanks, to no avail.

45. Titan has operated in bad faith by disingenuously claiming that it incurred over $1.5 million in purported quality costs in an effort to evade its contractual obligations to Mubea.

46. The above actions and failures to pay constitute continuing and material breaches of the parties' Purchase Orders.

47. As a result of these breaches, Mubea suffers and continues to suffer damages totaling, but not limited to, $2,294,080.56.

WHEREFORE, Mubea Tailor Rolled Blanks, LLC, demands judgment in an amount sufficient to restore Mubea to the position it would have enjoyed but for Titan Tool & Die Limited's breach of contract, for the fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, plus all incidental and consequential damages, and for such other and further relief as may be just and proper under the circumstances

## COUNT II – UNJUST ENRICHMENT

48. Mubea restates and realleges paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49. Titan received a financial benefit from Mubea in the form of over $2,294,080.56 worth of Blanks that Mubea manufactured, which Titan unequivocally accepted and processed into automotive parts that it in turn supplied to Formet.

50. Although Titan accepted the Blanks manufactured by Mubea, and it was paid for these parts by Formet, it failed to pay Mubea for same.

51. Titan's failure to pay Mubea has resulted in an inequity, as Mubea lost significant time, resources and money manufacturing parts for which it was not compensated.

WHEREFORE, Mubea Tailor Rolled Blanks, LLC, demands judgment in an amount sufficient to restore Mubea to the position it would have enjoyed but for Titan Tool & Die Limited's unjust enrichment, for the fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, plus all incidental and consequential damages, and for such other and further relief as may be just and proper under the circumstances.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: July 2, 2021 | By: __/s/ Zainab S. Hazimi__<br>Thomas J. Manganello (P32255)<br>Zainab S. Hazimi (P80452)<br>Warner Norcross + Judd LLP<br>2715 Woodward Ave., Ste. 300<br>Detroit, MI 48201<br>(313) 546-6000<br>tmanganello@wnj.com<br>zhazimi@wnj.com<br>*Attorneys for Plaintiff* |

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in the above-entitled matter.

Respectfully submitted,

Dated: July 2, 2021  By:  */s/ Zainab S. Hazimi*
Thomas J. Manganello (P32255)
Zainab S. Hazimi (P80452)
Warner Norcross + Judd LLP
2715 Woodward Ave., Ste. 300
Detroit, MI 48201
(313) 546-6000
tmanganello@wnj.com
zhazimi@wnj.com
*Attorneys for Plaintiff*